IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 3:21cv 00275 |
| | ) | |
| APPROXIMATELY NINETEEN | ) | |
| PIT BULL-TYPE DOGS, | ) | |
| | ) | |
| Defendants *In Rem*. | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

COMES NOW the plaintiff, United States of America, by and through its counsel, Raj

Parekh, Acting United States Attorney for the Eastern District of Virginia and Janet Jin Ah Lee,

Assistant United States Attorney, brings this complaint and alleges as follows in accordance with

Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* brought to enforce 7 U.S.C. § 2156(e) for the

forfeiture of nineteen pit bull-type dogs that were involved in a violation of the animal fighting

venture prohibition of the Animal Welfare Act, 7 U.S.C. § 2156.

2.      The dogs were seized on or about November 19, 2020, by the Federal Bureau of

Investigation ("FBI") pursuant to federal search warrants executed at locations in the Eastern

District of Virginia.

3.      Because this Complaint is being filed for the purpose of establishing grounds for

forfeiture and providing notice to interested persons, it does not include all of the information

1

known by the Government in connection with the investigation underlying the claims for

forfeiture set forth herein.

## DEFENDANTS *IN REM*

4.      The following Defendants *in rem* were seized from 18273 Sandy Hill Road,

Courtland, Virginia[1]:

    a.  USM-561: underweight, tan female pit bull-type dog;

    b.  USM-562: underweight, black with white female pit bull-type dog;

    c.  USM-563: black male pit bull-type dog; and

    d.  USM-564: underweight, tan with white male pit bull-type dog.

5.      The following Defendants *in rem* were seized from 8620 Courthouse Road,

Providence Forge, Virginia:

    a.  USM-530: black and white male pit bull-type dog;

    b.  USM-531: tan male pit bull-type dog;

    c.  USM-532: underweight, brown female pit bull-type dog;

    d.  USM-533: brown female pit bull-type dog;

    e.  USM-534: underweight, brown female pit bull-type dog;

    f.  USM-535: black with white male pit bull-type dog;

    g.  USM-536: brown male pit bull-type dog;

    h.  USM-537: brown female pit bull-type dog;

    i.  USM-538: red and white female pit bull-type dog;

    j.  USM-539: brown female pit bull-type dog;

---

[1] An additional 22 pit bull-type dogs were found at the location and were surrendered by the owner. The owner claimed that the remaining dogs belonged to one or more other owners but would not disclose the names of those owners.

k.  USM-540: black female pit bull-type dog;

l.  USM-541: black with white female pit bull-type dog;

m.  USM-542: black male pit bull-type dog;

n.  USM-543: black female pit bull-type dog;

o.  USM-544: underweight, black male pit bull-type dog.

6.      The Defendant Dogs are in the custody of the United States Marshals Service and are being cared for by a contractor.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1355.

8.      This Court has *in rem* jurisdiction over the seized dogs pursuant to 7 U.S.C. § 2156. Upon the filing of this complaint, Plaintiff requests that the Court issue arrest warrants *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the seized dogs pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

9.      Venue is proper pursuant to 28 U.S.C. § 1355(b) because acts and omissions giving rise to the forfeiture took place in the Eastern District of Virginia.

## STATUTORY BASIS FOR FORFEITURE

10.     The federal Animal Welfare Act defines "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(f)(1). It is illegal to sponsor or exhibit an animal in an animal fighting venture. 7 U.S.C. § 2156(a)(1). It is also illegal to possess, train, sell, buy, transport, deliver or receive an animal for purposes of having the animal participate in an animal fighting venture. 7 U.S.C. § 2156(b).

3

11.     The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(e). Animals "seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.* In addition, "[n]ecessary care including veterinary treatment shall be provided while the animals are so held in custody." *Id.*

12.     The statute also contemplates forfeiture of seized animals. Specifically,

> [a]ny animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct.

*Id.* The costs incurred in caring for animals seized and forfeited under this section "shall be recoverable from the owner of the animals (1) if he appears in such forfeiture proceeding, or (2) in a separate civil action brought in the jurisdiction in which the owner is found, or transacts business." *Id*

13.     As explained below, the Defendant Dogs are animals involved in a violation of 7 U.S.C. § 2156, and are, therefore, subject to forfeiture to the United States of America pursuant to 7 U.S.C. § 2156(e).

## BACKGROUND ON DOG FIGHTING

14.     Dog fighting is a violent contest in which two dogs that are bred and conditioned for fighting are released by their owners or handlers in a controlled environment to attack each other and fight for purposes of entertainment or gambling. Fights usually end when one dog

withdraws, when a handler "picks up" his dog and forfeits the match, or when one or both dogs die.

15.     Pit bull-type dogs are the most prevalent type of dogs used in dog fighting ventures. This is due to their short coat, compact muscular build, and the aggressive temperament that some exhibit toward other dogs.

16.     Dog fighters select the strongest, most capable fighting dogs and selectively breed, sell, and fight those dogs that display particular traits.

17.     Some of these traits are: (1) "gameness" or aggressiveness and propensity to fight other dogs; (2) a willingness to continue fighting another dog despite traumatic and/or mortal injury; and (3) cardiovascular endurance to continue fighting for long periods of time and through fatigue and injury.

18.     Dog fighters fight dogs with a goal of obtaining "Champion" or "Grand Champion" status for their dogs, which is achieved by winning three or five fights, respectively.

19.     Dog fighters can generate substantial income from gambling on dog fights and from the sale and breeding of animals with a fighting lineage.

20.     Once a dog fighter locates an opponent and agrees upon terms, the match is "hooked," or set up.

21.     The dog then undergoes a conditioning process dog handlers refer to as a "keep."

22.     A "keep" is typically conducted for six to eight weeks before the scheduled match and involves a training program including: treadmills used to run and exercise the dogs away from public view; weight pulls used to increase the dog's strength and stamina; the use of devices such as "spring poles" and "flirt poles" to build jaw strength and increase aggression; and the administration of drugs, vitamins, and other medicine.

23.     Dog fighters typically do not start setting up matches for a dog until the dog reaches at least eighteen months to two years of age. Until then, dog fighters may test the dog out by "rolling" it or having the dog participate in short fights to assess the dog's demeanor. Thus, it is common for dog fighters to possess young dogs who are in the process of being trained to fight and, thus, do not yet have much, if any, scarring.

24.     It is common practice for those involved in training and fighting dogs to possess several dogs at one time. This practice is followed for several reasons. First, dog fighters generally maintain a stock of dogs at different weights and both sexes because, in dog fights, dogs are matched against other dogs to within a pound of the same weight against dogs of the same sex.  Maintaining a stock of several dogs thus increases the odds of owning a dog whose weight meets the requirements for a match being solicited by an opponent. Second, dog fighters also generally maintain multiple dogs in order to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting bloodline.

25.     Further, dog fighters must possess an inventory of dogs because dogs often die or are badly injured during fights. Dogs that lose fights or fail to show "gameness" are often killed. It is not uncommon for dogs that lose matches to be killed in cruel, torturous, and inhumane ways as punishment.

26.     Because of their conditioning and training, dogs used in animal fighting ventures are almost always housed separately from other dogs—in pens, cages, or on chains—so that they will not hurt or kill other dogs when the handler is absent. Heavy chains are often used when restraining dogs outdoors to develop neck strength in dogs used for fighting purposes.

27.     It is common for dog fighters to possess dog fighting paraphernalia used to exercise, train, restrain, and strengthen or condition their dogs, including:

a.  Treadmills, including treadmills that are modified to keep a dog from getting off the treadmill;

b.  Weighted collars, chains, and weight scales;

c.  "Spring poles"—ropes that dangle animal hides or "lures" that, when gripped by a dog's mouth, result in the dog being suspended partly or entirely off the ground. Spring poles are commonly used by dog fighters to strengthen and condition a dog's jaw and neck muscles to achieve a better "bite";

d.  "Flirt poles"—long poles with a hide or fur lure attached that is moved by a trainer to tease a dog; and

e.  "Break sticks"—sticks of wood, plastic, fiberglass, resin or other material that are used to pry open the jaws of dogs during a dog fight.

28.    Dog fighters often attempt to mend the injuries of their dogs rather than seek veterinary attention, which may raise suspicion regarding the cause of injuries. Thus, it is common to find veterinary supplies, including animal medication or supplements (which don't require a prescription), where dogs involved in dog fighting are being kept.

29.    Dogs who have been fought may have scars, puncture wounds, swollen faces, or mangled ears. Scars from organized dog fights are commonly found on the face, neck, and front legs.

## BASIS FOR FORFEITURE

30.    As part of an investigation into narcotics trafficking and illegal dog fighting in Virginia and elsewhere, special agents of the FBI and U.S. Drug Enforcement Administration, working in conjunction with the U.S. Attorney's Office for the Eastern District of Virginia, the Environment and Natural Resources Division of the U.S. Department of Justice and the Commonwealth of Virginia, identified a number of individuals in Virginia believed to be participating in an interstate network of dog fighters.

31.     On November 13, 2020, on the Government's application, Senior United States

District Judge Henry E. Hudson issued federal search warrants for 8620 Courthouse Road,

Providence Forge, Virginia. On November 16, 2020, Magistrate Judge Elizabeth W. Hanes

issued a federal search warrant for 18273 Sandy Hill Road, Courtland, Virginia. Among other

things, the warrants authorized the Government to search for and seize animals based on

probable cause that the animal was involved in a violation of 7 U.S.C. § 2156.

32.     On or about November 19, 2020, the warrants were executed by the FBI and DEA

with the assistance of other law enforcement officers. At the Providence Forge residence, the

agents and officers seized fifteen pit bull-type dogs. These fifteen dogs are among the

Defendants *in rem* identified in this complaint.

33.     On or about November 19, 2020, the FBI, with the assistance of other law

enforcement officers, executed a warrant at a residence in Courtland, Virginia. The agents and

officers seized a total of 26 pit bull-type dogs, 22 of which were abandoned to the Government at

that time. The four remaining pit bull-type dogs are among the Defendants *in rem* identified in

this Complaint.

### DEFENDANTS *IN REM*

34.     On or about November 19, 2020, FBI agents and other law enforcement executed

federal warrants at the Providence Forge and Courtland residences. During the execution of the

warrants, the agents observed that the Defendant Dogs were in a condition that was not

consistent with that of pet dogs.

35.     The dogs seized from the Providence Forge and Courtland residences were

housed in a manner consistent with animals involved in a dog fighting operation. At the

Providence Forge location, the dogs were located outside in an area behind a privacy fence. Ten

of the eleven adult dogs were individually chained with heavy chains to trees or heavy ground

anchors. The last adult dog was housed in a small pen. The area where the dogs were maintained

showed worn "chain spots" where the earth was worn in such a manner that there is no longer

any vegetation. The four puppies were located in elevated cages, two to each cage. The four

Defendant Dogs seized from the Courtland residence were also housed individually, three in

small crates and one chained outside. The small crates were found in a large shed behind the

house. The purpose of containing the adult dogs in this manner is to ensure that they cannot get

loose and attack other dogs.

36.     The following dogs are among those who exhibited extensive scarring, wounds,

sores, or other injuries:

      a.  USM-532 (including scarring on the head, neck, legs, and torso);

      b.  USM-533 (including scarring on the head, legs; healing wound on the torso);

      c.  USM-534 (including scarring and healing wounds on the head, neck, and legs; missing part of left ear);

      d.  USM-535 (including scarring and healing wounds on the head, legs, and torso);

      e.  USM-537 (including scarring on face, neck, legs);

      f.  USM-538 (including fresh wounds on the legs and torso and scarring on the torso, legs, and ear);

      g.  USM-544 (including fresh wounds and scarring on head, neck, legs and torso);

      h.  USM-561 (including scarring on head, shoulders, and legs, missing part of right ear);

      i.  USM-562 (including fresh wounds and scarring on head, neck, shoulders and legs);

      j.  USM-563 (including scarring on head, shoulders, and legs); and

9

k.  USM-564 (including fresh wounds and scarring on head, neck and legs.

37.    The following dogs are under the age of 18 months and, as described in paragraph 23, would be less likely to have been matched in a full fight: USM-530, USM-533, USM-535, USM-536, USM-537, USM-539, USM-540, USM-541, USM-542, USM-543. Dogs of this age are still in training.

38.    Of the dogs seized from the Providence Forge residence, two had fractured teeth with pulp exposure, which can be very painful (USM-531 and 532); three had fleas (USM-533, 536, 537); one had an eye infection (USM-533); one had patchy hair loss around the neck (USM-564); one had roundworm (USM-543); two had whipworms (USM-530, 533); six had giardia (USM-534, 535, 540, 541, 542, 543); and all had hookworms.

39.    Of the dogs seized from the Courtland residence, one had a fractured tooth (USM-561); one had a healing abscess (USM-562); one had patchy hair loss around the neck (USM-564); and all had hookworms.

40.    None of the Defendant dogs appeared spayed or neutered, which is common among dogs involved in a dog fighting operation.

41.    Additionally, agents seized a number of items commonly associated with an illegal dog fighting operation.

42.    At the Courtland residence, agents seized the following:

a.  Three treadmills, including one treadmill for humans that was outfitted with a leash clip and side walls to keep a dog from hopping off, and two dog treadmills, called "slat mills";

b.  Break sticks;

c.  Scales;

d.  Veterinary supplies, including: syringes; sodium chloride lactated ringer with needle used to replace fluids and electrolytes; Boldenone, an anabolic steroid;

Baytril; Iron-100; vials of distemper vaccine; tubing for IV use; Lupin 500, an antibiotic;

e.   An animal hide attached to a rope;

f.   Weighted dog vest and weighted dog harness;

g.   A flirt pole; and

h.   Weights attached to a chain.

43.      Agents observed items commonly associated with an illegal dog fighting operation at the Providence Forge residence, including several used and unused syringes and animal medication containers. Agents seized from the Providence Forge residence the following dog fighting paraphernalia:

a.   Weighted collar used to strengthen a fighting dog's neck;

b.   Electric dog collar;

c.   Syringes; and

d.   Spring pole with animal hide.

## REQUEST FOR RELIEF

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the Defendant Dogs; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Dogs be forfeited to the United States for disposition according to law; that the Court enter judgment for costs associated with the care of the Defendant Dogs pursuant to 7 U.S.C. § 2156(e) should any interested party file a claim for the Defendant Dogs; and that the United States of America be granted such other relief as this Court may deem just and proper.

DATED this 26th day of April 2021.

Respectfully submitted,
RAJ PAREKH
ACTING UNITED STATES ATTORNEY


By: _____/s/_____
Janet Jin Ah Lee
Assistant United States Attorney
Virginia State Bar No. 84104
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804/819-5400
Fax: 804/771-2316
Email Address: Janet.Lee@usdoj.gov

## VERIFICATION

I, David Vallario, Special Agent, Federal Bureau of Investigation (FBI),

declare under penalty of perjury as provided by 28 United States Code § 1746, that

the foregoing Complaint for Forfeiture in Rem is based on information known by

me personally and/or furnished to me by various federal, state, and local law

enforcement agencies, and that everything contained therein is true and correct to

the best of my knowledge.

Executed at Richmond, Virginia, on April 26, 2021.


*D Vallario*
_____

David Vallario
FBI Special Agent